IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02631-NRN

JANINE MARIE ZUMERCHIK,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Janine Marie Zumerchik was not disabled for purposes of the Social Security Act. AR[1] 21. Ms. Zumerchik has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #12.

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##11, and 11-1 through 11-11.)

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Ms. Zumerchik "has the following severe impairments: migraines, traumatic brain injury, disorders of muscle ligament and fascia, neurocognitive disorder, post-traumatic stress disorder (PTSD), and depressive disorder." AR 20. The ALJ then determined at step three that Ms. Zumerchik "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. AR 20–22. Because she concluded that Ms. Zumerchik did not have an impairment or combination of impairments that meets the severity of the listed

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

impairments, the ALJ found that Ms. Zumerchik has the following residual functional capacity ("RFC"):

> . . . [Ms. Zumerchik] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can sit for 6 hours out of an 8-hour workday; the claimant can stand or walk for 6 hours out of an 8-hour workday; the claimant can occasionally climb ramps and stairs, the claimant can occasionally climb ladders, ropes, or scaffolds; the claimant can frequently balance, stoop, kneel, crouch, or crawl; the claimant retains the ability to understand, remember, and carry out simple and detailed instructions that can be learned in 3 months or less with no fast paced production quotas; the claimant must avoid noisy industrial settings and strobe or flashing lights; the claimant must avoid more than occasional interaction with coworkers, supervisors, or the general public; and the claimant can adapt to simple workplace changes.

AR 22.

The ALJ found that Ms. Zumerchik was unable to perform any past relevant work, but concluded that "considering [Ms. Zumerchik]'s age, education, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform," including marker, officer help, and cleaner housekeeper. AR 32–33. Accordingly, Ms. Zumerchik was deemed not to have been under a disability from March 23, 2016 through November 21, 2018, the date of the decision. AR 33

## Analysis

Ms. Zumerchik argues that the ALJ's decision should be reversed because her RFC determination is not supported by substantial evidence. Specifically, Ms. Zumerchik contends that the ALJ improperly discounted the opinions of her treating physicians, Catherine Schieve, M.D. (a psychiatrist), and Mary Ann Keatley, Ph.D. (a speech-language pathologist).

3

Ms. Zumerchik suffered closed head injury in a 1999 car accident. Upon a referral by Dr. Schieve,[3] on December 16, 17, and 18, 2013, Ms. Zumerchik underwent a neuropsychological evaluation by Jan Lemmon, Ph.D. AR 282. Dr. Lemmon observed that Ms. Zumerchik "had difficulty holding two or more pieces of information in mind simultaneously" and that on a list learning task, "she repeated words without awareness of doing so, and she provided words that were not on the list." AR 287. Summarizing the results of the evaluation, Dr. Lemmon stated:

> Impairment was found in logical analysis, concept formation and abstract thinking. She [Ms. Zumerchik] does describe poor judgment and impulsivity. Some impulsive behaviors were noted during the testing process. She evidenced below average performance on a test that measures auditory discrimination on non-verbal materials and overall integrity of cerebral functioning. Below average to mild impairment was found in verbal fluency or word finding. Mild to moderate impairment was documented for visual accuracy. Mild to moderate impairment was found in vigilance and attention capacity. Low average performance was documented for working memory. Overall mild impairment was found in auditory memory. Problems were noted with efficient encoding and registration of new information. . . .

AR 292.

On February 16, 2016, Dr. Schieve completed a Mental Capacity Assessment. AR 343–45. Dr. Schieve determined that Ms. Zumerchik had marked or extreme impairments in her ability to remember locations and procedures; understand and remember very short and simple instructions; understand and remember detailed instructions, carry out detailed instruction;

---

[3] Ms. Zumerchik was Dr. Schieve's patient in psychotherapy from 2013–2018. The two met weekly through 2017, and then every other week until Dr. Schieve's retirement in 2018. AR 515.

maintain attention for extended periods, perform activities within a schedule; sustain an ordinary routine without special supervision; work with or near others without distraction; make simple work-related decisions; complete a normal workweek without interruption from her psychological symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticism; get along with coworkers without distracting them; and set realistic goals or make independent plans. *Id.*

In a letter dated May 3, 2016, Dr. Schieve stated that Ms. Zumerchik had a "major difficulty" managing stress and that, due to the car accident, she had "significant difficulties with concentration, multi-tasking, problem solving, and memory," and although she was able to manage her activities of daily living, "she spends a great deal of time in the quiet of her own home in order to avoid overstimulation and anxiety." AR 523. In an April 17, 2017 letter, Dr. Schieve further opined that Ms. Zumerchik's injuries caused difficulty with concentration and time management that interfered with her activities of daily living; trouble with social functioning; choppy and tangential speech; poor memory; trouble finding words during conversations; and difficulty processing what others are saying to her. AR 442. Dr. Schieve noted that Ms. Zumerchik's elderly father supported her. *Id.* On July 13, 2018, Dr. Schieve authored another letter in which she notes that in her time treating Ms. Zumerchik, Ms. Zumerchik had "numerous difficulties with complex planning and problem solving." AR 515.

On July 31, 2018, Dr. Keatley[4] completed a Mental Capacity Assessment. AR 519–21. Like Dr. Schieve, Dr. Keatley opined that Ms. Zumerchik had marked or extreme limitations in most areas of mental functioning. *Id.*

In performing her RFC analysis, the ALJ gave Dr. Schieve and Dr. Keatley's opinions little weight. The ALJ noted that Dr. Schieve's opinion is not supported by any objective clinical findings. AR 31. As to Dr. Keatley, the ALJ found that her opinion is inconsistent with her own records. *Id.* The ALJ determined that both opinions' findings that Ms. Zumerchik had marked or extreme limitations in most areas of mental functioning was inconsistent with findings of consultative examiner, Frederick G. Leidal, Psy.D.

Dr. Leidal examined Ms. Zumerchik on May 31, 2017. AR 447–54. As summarized by the ALJ, Dr. Leidal opined that

> (1) the claimant's ability to understand, remember and carry out simple oral instruction is similar to other adults of the same age;
>
> (2) the claimant's ability to follow more complex instructions or directions in a work setting appeared to be moderately impaired for age expectations;
>
> (3) the claimant's ability to maintain attention and concentration was not impaired compared to other adults of the same age;
>
> (4) the claimant's ability to relate to others, such as peers, neighbors, fellow works and/or supervisors is mildly impaired; and
>
> (5) the claimant's ability to withstand the mental stress and pressures associated with day-to-day work activity appears mildly impaired to moderately impaired.

---

[4] Dr. Keatley treated Ms. Zumerchik from January 2014 through December 2015, prior to the date of filing. *See* AR 294–335. Dr. Keatley then saw Ms. Zumerchik four times in 2018 for cognitive and language rehabilitation sessions. *See* AR 506–14.

6

AR 28. The ALJ gave Dr. Leidal's opinion great weight because "it is supported by his examination findings and consistent with the claimant's behavior while being treated by Dr. Keatley," where Ms. Zumerchik was "highly cooperative and motivated in her treatment." AR 29.

The ALJ also gave great weight to the opinion of examining physician, Mark Suyeishi, Psy.D., who opined that Ms. Zumerchik had a moderate limitation in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. AR 28. Dr. Suyeishi also stated that Ms. Zumerchik could perform work that does not involve significant complexity or judgment due to her below average ability to understand complex directions. *Id.* The ALJ found that Dr. Suyeishi's opinion "is well supported by reference to mental status examination findings and is consistent with the neuropsychological evaluation performed by Dr. Lemmon," where Ms. Zumerchik "demonstrated impairment in logical analysis, concept formation, and abstract thinking." *Id.*

Ms. Zumerchik argues that the ALJ erred in giving Dr Schieve and Dr. Keatley's opinions little weight. In fact, she contends that they should have been accorded controlling weight. The Court disagrees.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the

claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. § 416.927(1), (2); SSR 96–6p, 1996 WL 374180, at *2). No matter the relationship, the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted).

The ALJ must consider the following factors when evaluating all medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

First, the Court is not convinced that Dr. Keatley can be classified as a "treating physician" given the facts of this case. "Only 'acceptable medical sources' can be considered a treating source, establish the existence of a medically determinable impairment, and give a medical opinion." *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012). Pursuant to 20 CFR § 416.902(a)(5), a qualified speech-language pathologist can be considered an

8

acceptable medical source "*for speech or language impairments only.*" In her Mental Capacity Assessment of Ms. Zumerchik, Dr. Keatley offers medical opinions well beyond of the scope of this express limitation; her opinion concerns Ms. Zumerchik's mental and emotional functioning and is not related to her speech and/or language impairments. Thus, Dr. Keatley cannot be considered an acceptable medical source, and her opinion is not entitled to be deemed that of a treating physician.

However, for "other sources" who are not considered "acceptable medical sources," an ALJ should still explain the weight given to the opinion, but the evaluation "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6). *See also* SSR 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . ."). The ALJ's evaluation meets that standard here. The ALJ explained that Dr. Keatley's opinion that Ms. Zumerchik has "marked to extreme limitations in almost every domain of mental functioning is inconsistent with examination findings demonstrating that the claimant's presentation, speech, emotions, thought processes, and thought content were within normal limits." AR 31. The ALJ points to treatment notes that show that in 2015, Ms. Zumerchik was shown to have a normal mood, affect, productivity, memory, attention, concentration, judgment, reason, and insight AR 394. The

ALJ also contrasted Dr. Keatley's opinion that Ms. Zumerchik has a marked impairment in her ability to cooperate with others with Dr. Keatley's own treatment notes describe Ms. Zumerchik a highly cooperative and motivated, which is echoed in the opinion of Dr. Liedal. AR 31. These inconsistencies may seem relatively minor, but there is no doubt that Dr. Keatley, as an "other source," is at odds with Dr. Leidal and Dr. Suyeishi, whose opinions as acceptable medical sources must be given greater weight. The Court cannot say, then, that the ALJ improperly discounted Dr. Keatley's opinion.

Dr. Schieve, on the other hand, was clearly Ms. Zumerchik's treating physician. While it is true that an ALJ should, in general, give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, *see Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *See* SSR 96-6P, 1996 WL 374180, at *3. The ALJ determined that Dr. Schieve's opinion that Ms. Zumerchik had marked to extreme restrictions in almost every area of mental functioning was inconsistent with Dr. Leidal's "generally unremarkable examination findings." AR 30–31. The ALJ notes that Dr. Leidal found Ms. Zumerchik to be "alert; oriented to person, place, time and situation; having linear and future oriented though content; presenting with a normal mood; and displaying no signs of agitation or restlessness." AR 449–50. As the Commissioner points out, the ALJ had before her evidence that favored a finding of extreme mental limitations and evidence

that favored finding the opposite; she chose the latter and gave specific, legitimate reasons for doing so, which are legally sufficient and supported by substantial evidence in the record. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that [the claimant] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so.") (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). The Court is not permitted to reweigh the evidence now or substitute its discretion for that of the Commissioner. *Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1201 (D. Colo. 2014)

Ms. Zumerchik also challenges the ALJ's determination that Dr. Schieve's opinion was not supported by objective clinical findings. Specifically, Ms. Zumerchik argues that the ALJ failed to address the letters Dr. Schieve authored that summarized her findings from her treatment notes. However, the ALJ explicitly referred to the letters in her decision: she gave them "some weight" and "incorporate[d] Dr. Schieve's opinions regarding the claimant's troubles managing stress and tasks in the claimant's [RFC] by restricting her to adapting to only simple workplace changes." AR 31. Thus, Ms. Zumerchik's argument on this point is unavailing.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Ms. Zumerchik's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 2nd day of July.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge